UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-62127-CIV-ROSENBAUM/HUNT

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

JENNY E. COPLAN,

        Defendant.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

This matter is before the Court upon Plaintiff Securities and Exchange Commission's Motion for Default Final Judgment [ECF No. 9]. The Commission's Motion seeks: (1) a default judgment against Defendant Jenny E. Coplan on Counts I-V of the Complaint; (2) permanent injunctions against Coplan against violations of the federal securities laws alleged in the Complaint; (3) disgorgement of $878,000, plus prejudgment interest of $58,756.97, for a total of $936,756.97; and (4) a civil penalty, with the amount to be determined upon the Commission's subsequent motion after Commission's counsel has obtained authorization from the five-member Commission to seek a specific penalty amount. The Court has reviewed the Motion and the record in this case and is otherwise fully advised in the premises. For the reasons set forth below, the Court grants Plaintiff's Motion.

1

## I. Procedural Background

The Commission filed this action on September 30, 2013, seeking injunctive, declaratory, and monetary relief against Coplan for violating the federal securities laws. ECF No. 1. On October 4, 2013, the Commission sent Coplan a Waiver of Service of Summons, which she returned executed; thus, her responsive pleading was due by December 3, 2013. ECF No. 4. Coplan did not respond to the Complaint, and on January 14, 2014, upon the Commission's motion, the Clerk entered a default against Coplan. ECF No. 7. The Commission subsequently moved for a default judgment, ECF No. 9, and on January 30, 2014, the Court ordered Coplan to show cause in writing why the default judgment motion should not be granted. ECF No. 10. The Court also cautioned Coplan that a failure to timely respond may result in the immediate entry of a default judgment against her. *Id.* To date, Coplan has not responded to the Order to Show Cause, nor has she responded to the Complaint.

## II. Legal Standard

Under Federal Rule of Civil Procedure 55, if a defendant fails to plead or otherwise defend a complaint filed against it, the Clerk of Court may enter a default against that party. Fed. R. Civ. P. 55(a). Once a default is entered, a plaintiff may seek entry of a default judgment against the defaulting defendant. Fed. R. Civ. P. 55(b).

By defaulting, a defendant is taken to admit the well-pleaded allegations of fact in a plaintiff's complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Buchanan v. Bowman*, 820 F.2d 359, 360 (11th Cir. 1987). When a defendant fails to defend an action and a default has been entered against her, her liability for violations of the federal

securities laws as alleged in the Complaint, and the propriety of the requested relief, are deemed established. *Buchanan*, 820 F.2d at 360; *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983). Although facts are admitted as true, conclusions of law are not; a sufficient basis to state a claim must still exist in the pleadings before a court may enter a default judgment. *Nishimatsu*, 515 F.2d at 1206.

### III. Factual Allegations

The Complaint pleads the following facts, which are deemed admitted by virtue of Defendant's default. According to the Commission, Coplan, a resident of Tamarac, Florida, initiated a fraudulent investment scheme by soliciting individuals to invest in immigration bail bonds and then misappropriating those funds for personal use. Through Immigration General Services, LLC, of which Coplan was the managing member and acting president, Coplan offered and sold securities in the form of promissory notes and investment contracts. *Id.* at ¶ 19. No registration statement was filed or was in effect in connection with these securities, nor was Immigration General Services entitled to any registration exemption. *Id.* at ¶ 20. Coplan actively solicited investors and told them that her company would entrust their funds to an investment broker, who in turn, would invest the money in immigration bail bonds. *Id.* at ¶ 35. Coplan promised high rates of return on these investments, telling investors that they would receive anywhere from five to nine percent in profits per month. *Id.* at ¶ 32. In some instances, Coplan offered investors higher rates of return if they invested additional funds. *Id.* at ¶ 30. Coplan also touted the investments as secure, assuring investors that their funds were insured by the Federal Deposit Insurance Corporation ("FDIC") and that the investment broker secured all investments with the detained immigrants' collateral property.

*See id.* at ¶¶ 24, 25, 37. Coplan, in her corporate capacity, executed promissory notes and investment contracts with investors in Florida, California, Georgia, Texas, Canada, and Colombia. *Id.* at ¶ 26.

Despite Coplan's representations, neither she nor her company invested any of the funds as promised. *Id.* at ¶ 33. Rather, Coplan used investor funds to operate a Ponzi scheme and pocketed money for her own personal use. *Id.* at ¶ 36. Indeed, no money went towards the purported bail bonds, and the professed investment broker was in fact non-existent. *Id.* at ¶ 43. Coplan nonetheless provided several investors with fictitious financial statements and FDIC statements, leading them to believe that they were making a profit on their investments and that those investments remained secure. *See id.* at ¶¶ 37-43. In reality, Coplan, in classic Ponzi-scheme fashion, utilized investor funds to pay earlier investors, representing those payments as interest or profits and principal repayments. *See id.* at ¶ 46. Through this venture, Coplan raised approximately $4 million from more than 90 investors and misappropriated at least $878,000 for her own use and benefit. *Id.* at ¶

## IV. Discussion

### A. Violation of Sections 5(a) and (c) of the Securities Act (Count I)

Sections 5(a) and (c) of the Securities Act of 1933 ("Securities Act") prohibit selling or offering to sell or buy securities without either having an effective registration statement filed with the Commission as to those securities or qualifying for an exemption from the registration requirement. 15 U.S.C. §§ 77e(a) and (c). "To establish a *prima facie* violation of Section 5, a plaintiff need allege only the sale or offer to sell securities, the absence of a registration statement covering the securities, and the use of the mails or facilities of interstate commerce in connection with the sale or offer." *Raiford v. Buslease, Inc.* 825 F.2d 351, 354 (11th Cir. 1987) (citing *Swenson*

*v Engelstad,* 626 F.2d 421, 424-25 (5th Cir.1980)).  Scienter is not an element of a Section 5 violation.  *Aaron v SEC*, 446 U.S. 680, 714 n.5 (1980).

The Complaint alleges that Coplan offered and sold securities in the form of promissory notes and investment contracts through Immigration General Services, no registration statement was filed or in effect with the Commission pursuant to the Securities Act, and no exemption from registration exists with respect to the securities and transactions described in the Complaint.  ECF No. 1 at ¶¶ 19, 20.  The Commission also avers that Coplan used the mails or facilities of interstate commerce in connection with the offering through use of the telephone, email, and mail.  *Id.* at ¶¶ 15, 21, 31, 33, 38.  These factual allegations are sufficient to establish that Coplan violated Sections 5(a) and (c) of the Securities Act, and therefore a default judgment is appropriate as to Count I of the Complaint.

### B. Violation of the Anti-Fraud Sections of the Federal Securities Laws (Counts II-IV)

Section 17(a) of the Securities Act proscribes fraudulent conduct in the offer or sale of securities; similarly, section 10(b) and Rule 10b-5 of the Securities Exchange Act proscribe fraudulent conduct in connection with the purchase or sale of securities.  *United States v. Naftalin*, 441 U.S. 768, 773 n. 4 (1979).  To establish a violation of § 10(b) or Rule 10b-5 (Count II of the Complaint), the Commission must show (1) a material misrepresentation or materially misleading omission (2) in connection with the purchase or sale of a security, (3) made with scienter.  *SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244 (11th Cir. 2012).  To establish a violation of § 17(a)(1) (Count III of the Complaint), the Commission must prove (1) a material misrepresentation or materially misleading omission (2) in the offer or sale of a security, (3) made with scienter.  *Id.*.  And, to establish a violation of section § 17(a)(2) or 17(a)(3) (Count IV of the Complaint), the

5

Commission must demonstrate (1) a material misrepresentation or materially misleading omission (2) in the offer or sale of a security, (3) made with negligence. *Id.*

All of these violations also require proof of an interstate commerce or mails element. More specifically, under the Exchange Act, the SEC must demonstrate that Coplan used the mails, an instrumentality of interstate commerce, or the facility of a national securities exchange in connection with the violation. *See* 15 U.S.C. § 78j(b). Similarly, the Securities Act contains as an element a requirement that a defendant have employed the mails or an instrumentality of interstate commerce in connection with the violation. *See* 15 U.S.C. § 77q(a).

### 1. Material Misstatements and Omissions

The Commission avers that in connection with soliciting investments in Immigration General Services, Coplan made numerous misrepresentations and omissions regarding, among other things, (i) the rates of return; (ii) the investment strategy; (iii) the safety of the principal; (iv) the financial condition of the purported bail-bond investment brokers; (v) the use of investor funds; (vi) investor account balances; and (vii) the source of investor returns. ECF No. 1 at ¶¶ 32-52. In particular, Coplan told investors that their money would be invested in bail bonds through an investment broker, when, in fact, no money was ever invested and no broker actually existed. She also promised investors significantly high rates of return and simultaneously touted the phony investments as secure, falsely telling investors that their money was insured by the FDIC and that the funds were backed by collateral.

These misrepresentations and omissions were also material. In the context of securities fraud, the test for materiality is "whether a reasonable [person] would attach importance to the fact misrepresented or omitted in determining his course of action." *SEC v. Merchant Capital, LLC*, 483

F.3d 747, 766 (11th Cir. 2007) (quoting *SEC v. Carriba Air*, 681 F.2d 1318, 1323 (11th Cir. 1982)) (internal quotation marks omitted); *see also SEC v. Ginsburg*, 362 F.3d 1292, 1302 (11th Cir. 2004) ("Materiality is proved by showing a 'substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" (internal citation omitted)).  Here, Coplan's purported misstatements regarding the nature of the investment scheme, the source of the profits, and the security of the investments, along with her omissions with respect to the very existence of the bail bonds, are sufficient to establish materiality.  In this regard, a substantial likelihood exists that a reasonable investor considering whether to invest would have wanted to know that Coplan (1) used investors' funds to pay earlier investors their purported returns; (2) misappropriated investors' funds for personal use; (3) never invested any of the investors' contributions in bail bonds; and (4) provided false financial statements.  As a result, the Commission has adequately alleged that Coplan made material misstatements and omissions.

### 2. Scienter

Scienter is an element of the Commission's claims under Section 17(a)(1) of the Securities Act (Count III) and Section 10(b) and Rule 10b-5 of the Exchange Act (Count II).  Scienter is defined as either knowing misconduct or severe recklessness. *Carriba Air*, 681 F.2d at 1324.  In this Circuit, "[s]evere recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been

aware of it." *McDonald v. Alan Bush Brokerage Co.,* 863 F.2d 809, 814 (11th Cir.1989) (citation omitted).

Based on the facts set forth in the Complaint, Coplan acted with the requisite scienter. Significantly, Coplan made misrepresentations and omissions regarding rates of return and safety of principal that she knew to be false because, in actuality, she made no investments and kept investor funds. ECF No. 1 at ¶¶ 32-41]. To perpetuate these misrepresentations, Coplan created fictitious account statements that falsely described intact principal balances and purported gains. *Id.* at ¶¶ 33, 42-43. Coplan also made Ponzi payments to investors from other investors' funds and held them out as purported investment returns. *Id.* at ¶¶ 45-46. Even as the scheme unraveled, and after failing to pay investors their purported returns, Coplan continued to make misrepresentations to investors and continued to solicit investors. *Id.* at ¶¶ 47-51. These actions—which are deemed admitted—constitute an "extreme departure from the standards of ordinary care," and the danger of misleading buyers from these actions was "so obvious" that Coplan must have known about it. *See, e.g.*, *SEC v. Chemical Trust*, No. 00-8015-CIV, 2000 WL 33231600 at *9 (S.D. Fla. Dec. 19, 2000) (defendants' knowing distribution of materials they knew contained false and misleading information established requisite scienter). In light of these factual allegations, Coplan is deemed to have acted with scienter and, consequently, with the lower standard of negligence required for the Commission's claim under Sections 17(a)(2) and (3) of the Securities Act (Count IV).

### 3. "In Connection With" the Purchase of Sale of a Security

Section 10(b) of the Exchange Act requires that the alleged actions be "in connection with" the sale or purchase of securities. In determining whether a misstatement or omission is related to later securities transactions, the Supreme Court has held that courts should broadly interpret the

phrase "in connection with" under section 10(b) because the securities laws "should be construed not technically and restrictively, but flexibly to effectuate [their] remedial purposes." *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (quoting *Affiliated UTE Citizens of the State of Utah v. United States*, 406 U.S. 128, 151 (1972)) (internal quotation marks omitted). "[W]henever assertions are made . . . in a manner reasonably calculated to influence the investing public," the "in connection with" requirement is satisfied. *SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968). In this regard, section 10(b) bars "deceptive devices and contrivances in the purchase or sale of securities whether conducted in the organized markets or face to face." *SEC v. Warner*, 652 F. Supp. 647, 651 (S.D. Fla. 1987) (quoting *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12 (1971)) (internal quotation marks omitted).

The facts in this case show that Coplan made numerous misrepresentations and omissions in connection with the sale of securities. As discussed previously, Coplan, both directly and through Immigration General Services, sold securities in the form of promissory notes and investment contracts. ECF No. 1 at ¶ 19. In conjunction with these sales, Coplan failed to disclose to investors how she was spending contributions, misrepresented the rates of investment returns and the safety of the investment, misrepresented the sources of returns, and provided false account balances. *Id.* at ¶¶ 32-51. The allegations thus satsify the "in connection with" requirement.

### 4. Interstate Commerce

Finally, under the Exchange Act, the Commission must demonstrate that Coplan used the mails, an instrumentality of interstate commerce, or the facility of a national securities exchange in connection with the violation. *See* 15 U.S.C. § 78j(b). Similarly, the Securities Act requires that a defendant have employed the mails or an instrumentality of interstate commerce in connection with

the violation. *See* 15 U.S.C. § 77q(a). Here, the Complaint specifically alleges that Coplan used the instrumentalities of interstate commerce or the mail to conduct the fraud. *See* ECF No. 1 at ¶¶ 15, 21, 31, 33, 38. As these facts are deemed admitted, the Commission has established this element.

In light of the foregoing, the Court concludes that the Complaint alleges sufficient facts demonstrating that Coplan violated Sections 17(a)(1)-(3) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act. The Court will thus enter a default judgment against Coplan on Counts II through IV of the Complaint.

### C. Violation of Section 15(a)(1) of the Exchange Act (Count V)

Count V of the Complaint alleges that Coplan violated the broker-registration requirement under section 15(a)(1) of the Exchange Act. Section 15(a)(1) provides, in relevant part,

> (a) Registration of all persons utilizing exchange facilities to effect transactions; exemptions.
>
> (1) It shall be unlawful for any broker or dealer which is a person other than a natural person or a natural person not associated with a broker or dealer . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security … unless such broker or dealer is registered in accordance with subsection (b) of this section.

15 U.S.C. § 78o(a)(1).

As set forth above, Coplan used interstate commerce to effect the securities transactions at issue. The Commission further asserts that Coplan is not registered with the Commission as a broker-dealer. ECF No. 1 at ¶ 9. Section 3(a)(4)(A) of the Exchange Act defines "broker" as any person "engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. §78c(a)(4). A person may be found to be acting as a broker if she participates in securities transactions "at key points in the chain of distribution." *Mass. Fin. Servs. Inc. v. Secs. Investor*

*Protection Corp.*, 411 F. Supp. 411, 415 (D. Mass. 1976), *aff'd*, 545 F.2d 754 (1st Cir. 1976). Courts also consider several factors in determining whether someone acted as a broker, including whether the person (1) actively solicited investors; (2) advised investors as to the merits of an investment; (3) acted with "certain regularity of participation" in securities transactions; and (4) received transaction-based compensation. *SEC v. Corporate Relations Group*, No. 99-C1222, 2003 WL 25570113, at *58 (M.D. Fla. Mar. 28, 2003); *SEC v. U.S. Pension Trust Corp.*, No. 07-22570-CIV, 2010 WL 3894082, at *21 (S.D. Fla. Sept. 30, 2010). In this case, the Commission contends that Coplan acted as a broker pursuant to several of the factors listed above and participated at key points in the transactions.

First, Coplan actively solicited investors. See ECF No. 1 at ¶ 21. In particular, the Commission contends that Coplan marketed the investments through personal discussions with individuals, in person and during telephone conversations. *Id.* at ¶¶ 3-4, 16-17, 21, 23-25, 32-41. Moreover, the Commission asserts that she used investors as agents to solicit new investors and paid people to refer friends and family members. *Id.* at ¶ 22.

Second, Coplan advised investors as to the merits of the investments**.** Coplan pitched the investment opportunity to individuals as a risk-free way to earn high returns in a short period of time. *Id.* at ¶¶ 3-4, 24-25, 32, 37-38, 40. Coplan also promised investors that their principal would be secure and that they would make guaranteed returns. *Id.*

Third, Coplan regularly participated in securities transactions. According to the Commission, from no later than January 2009 until at least October 2011, Coplan offered and sold securities to numerous investors. *Id.* at ¶¶ 2, 19. During that time, she solicited approximately 90 investors and raised approximately $4 million. *Id.* at ¶ 52.

Finally, Coplan participated at key points in the transactions. The Complaint alleges that Coplan actively sought out investors and signed the promissory notes and investment contracts issued to investors. *Id.* at ¶¶ 21, 22, 26.

These facts, taken as true, create a plausible inference of unregistered broker conduct in violation of Section 15(a)(1) of the Exchange Act. As a result, the Court will enter a default judgment against Coplan on Count V of the Complaint.

### V. Relief Requested

### A. Permanent Injunction[1]

The Commission seeks a permanent injunction against Coplan under each Count of the Complaint. Section 20(b) of the Securities Act and section 21(d)(1) of the Exchange Act permit the Commission to seek a permanent injunction against further violations of the federal securities laws. *See* 15 U.S.C. §77t(b); 15 U.S.C. §78u(d)(1). To obtain an injunction, the Commission must prove by a preponderance of the evidence that (1) the defendant violated the securities laws and (2) there is a reasonable likelihood that the defendant will repeat the violations. *Calvo*, 378 F.3d at 1216. As discussed previously, the facts set forth in the Complain sufficiently indicate that Coplan violated sections 5(a), 5(c), and 17(a) of the Securities Act, and sections 10(b) and 15(a)(1) and Rule 10b-5 of the Exchange Act. Accordingly, the Court examines whether a reasonable likelihood exists that

---

[1] The Eleventh Circuit has held that injunctions merely requiring a party to "obey the law" fail to meet the specificity demanded by Rule 65(d), Fed. R. Civ. P. *See SEC v. Goble*, 682 F.3d 934, 949-50 (11th Cir. 2012). However, the Eleventh Circuit also recognized the need for "some breadth" in SEC enforcement actions and stated that "a broad, but properly drafted injunction, which largely used the statutory or regulatory language may satisfy the specificity requirement of Rule 65(d) so long as it clearly lets the defendant know what he is ordered to do or not do." *Id.* at 952. Here, although the agreed injunction makes reference to statutory and regulatory language and citations, it also includes specific language detailing the conduct in which Coplan is prohibited from engaging. Thus, the entry of a permanent injunction in this case is proper.

Coplan will repeat these violations.

In determining whether a wrong will be repeated, the Court considers the following indicia: (1) the egregiousness of the defendant's actions, (2) the isolated or recurrent nature of the violations, (3) the degree of scienter involved, (4) the defendant's recognition of the wrongful nature of her conduct, (5) the sincerity of the defendant's assurances against future violations, and (6) the likelihood that the defendant's occupation will present opportunities for future violations. *Calvo*, 378 F.3d at 1216. In this case, the factors weigh in favor of granting injunctive relief.

As to the first and second considerations, the alleged conduct, taken as true for purposes of this Motion, was egregious and recurrent. Coplan sold securities to investors for years. ECF No. 1 at ¶¶ 2, 19. In doing so, she made numerous misrepresentations regarding the security of the investments and the rates of return, while simultaneously misappropriating investors' contributions and failing to invest the funds as warranted. *Id.* at ¶¶ 32-51. The factual allegations further indicate that this was not an isolated occurrence, but rather a systematic and calculated plan to deceive investors. *Id.* at ¶¶ 2, 19, 32-51.

For these same reasons, Coplan also displayed a high degree of scienter. According to the Commission, Coplan knew that she was misleading investors by not disclosing the manner in which she was spending their contributions, by making false promises with respect to the safety of their investments, and by guaranteeing returns when she was not in fact investing their money. *Id.* at ¶¶ 2, 19, 32-51. These purported violations were flagrant and deliberate. For years, Coplan, directly and through Immigration General Services, solicited investors. She persuaded investors to purchase securities by promising them that their principal was secure and that they would receive high rates of return on their investments, all the while knowingly omitting that she was actually appropriating

13

investor contributions for her personal use and utilizing investors' funds to pay earlier investors their purported returns. *Id.*

With respect to the fourth and fifth considerations, Coplan has failed to appear in this case and thus has neither recognized the wrongful nature of her alleged conduct nor provided any assurances against future violations. As to the sixth consideration, there are no facts before the Court indicating that Coplan will not avail herself of future opportunities to defraud potential investors, and the egregious nature of her conduct, as alleged in the Complaint, indicate that she would. *See, e.g.*, *SEC v. Risher*, No. 11-cv-1440, 2013 WL 1912719, at *9 (M.D. Fla. Apr. 25, 2013).

Accordingly, Coplan's alleged conduct, taken as true by virtue of Coplan's default, warrants the entry of a permanent injunction against her.

### B. Disgorgement And Prejudgment Interest

The Commission also seeks the disgorgement along with prejudgment interest. Disgorgement is an equitable remedy designed to both force a defendant to surrender her ill-gotten gains and to deter others from violating the securities laws. *See SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 n. 6 & 735 (11th Cir. 2005). The purpose of such remedy is to compel defendants to "give up the amount by which [they were] unjustly enriched." *SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987). Moreover, "[t]he effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable." *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1103-04 (2d Cir. 1972). The Court has broad discretion in calculating the amount to be disgorged, which "need only be a reasonable approximation of profits causally connected to the violation." *First Jersey*, 101 F.3d at 1475-76 ("Any risk of uncertainty in calculating the disgorgement amount should fall on the wrongdoer whose illegal conduct created that uncertainty."); *see also Calvo*, 378

F.3d at 1217 ("Exactitude is not a requirement; so long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." (internal quotation marks, alterations, and citations omitted)).

The Complaint states that Coplan, directly and through her company Immigration General Services, raised approximately $4 million through her fraudulent scheme, returned approximately $3.1 million of this amount to investors, and misappropriated at least $878,000 in investor funds. *See* ECF No. 1 at ¶¶ 2, 9, 46, 52). The SEC has thus alleged that Coplan retained approximately $878,000 in ill-gotten gains.

The Commission also seeks prejudgment interest on the disgorgement amount. Whether to award prejudgment interest is a matter falling within the Court's discretion. *See SEC v. Carrillo*, 325 F.3d 1268, 1273 (11th Cir. 2003) (citing *Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1447 (11th Cir. 1998)). Courts impose prejudgment interest to prevent those found liable under the securities laws from enjoying any benefit accrued from the use of the ill-gotten gain. *SEC v. Yun*, 148 F. Supp. 2d 1287, 1293 (M.D. Fla. 2001) (citing *SEC v. Warde*, 151 F.3d 42, 50 (2d Cir. 1998)). Although "[w]hether to award prejudgment interest is a question of fairness," *SEC v. GMC Holding Corp.*, No. 6:08-cv-275, 2009 WL 506872, *6 (M.D. Fla. Feb. 27, 2009) (citing *Osterneck v. E.T. Barwick Indus., Inc.*, 825 F.2d 1521, 1536 (11th Cir. 1987)), proof of a defendant's scienter justifies such an award. *SEC v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275, 1313 (S.D. Fla.2007) (citing *Rolf v. Blyth*, 637 F.2d 77, 87 (2d Cir. 1980)). As discussed in detail above, Coplan knowingly defrauded investors and misappropriated hundreds of thousands of dollars. Based on these considerations, the Court imposes a requirement upon Coplan to pay prejudgment interest.

Prejudgment interest is calculated based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). The Commission asks the Court to calculate prejudgment interest from October 2011, which marked the end of Coplan's fraudulent scheme as alleged in the Complaint. The Commission has filed a prejudgment interest calculation showing that the prejudgment interest amounts to $58,756.97. *See* ECF No. 9-1. Accordingly, Coplan shall pay a total of $936,756.97, reflecting the disgorgement amount plus prejudgment interest.

### C. Civil Penalty

Finally, the Commission seeks the imposition of a civil penalty against Coplan pursuant to Section 20(d) of the Securities Act, 15 U.S.C § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d)(3). The purpose of civil penalties is to punish individual violators as well as to deter future violations. *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998). "Because civil penalties, like a permanent injunction, are imposed in part to deter the wrongdoer from similar conduct in the future, courts apply the same factors for determining injunctive relief in assessing civil penalties." *SEC v. Gane*, No. 03-61553, 2005 WL 90154, at *20 (S.D. Fla. Jan. 4, 2005) (citation omitted). In this regard, courts consider (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; (5) whether the defendant has admitted wrongdoing; and (6) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition. *See SEC v. Aura Fin. Servs., Inc.*, No. 09-21592-Civ, 2010 WL 3419200, at *3 (S.D. Fla. July 14, 2010) (citing *SEC v. One Wall Street, Inc.*, No. 06–CV–4217, 2008 WL 63256, at *4 (E.D.N.Y. Jan. 3, 2008)).

The Court has previously discussed many of these factors in connection with its analysis of the appropriateness of injunctive relief, thus, the Court need not belabor the subject by repeating that discussion here. As for the considerations that have not yet been addressed, the Court finds that the Complaint sufficiently establishes that Coplan's conduct created substantial losses or the risk of substantial losses to other persons inasmuch as she is alleged to have amassed nearly $4 million in investor contributions and misappropriated hundreds of thousands of dollars. Furthermore, as Coplan has not made an appearance in this matter, she has made no showing with respect to her current and future financial condition. The Court therefore concludes that a civil penalty should be imposed against Coplan. Because the Commission's counsel has requested ninety days to seek authority from the five-member Commission to request a specific penalty in this case, the Court reserves ruling on the appropriate amount of civil penalties to impose.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Entry of Default Final Judgment [ECF No. 9] is **GRANTED**. Pursuant to Rule 58, Fed. R. Civ. P., the Court will separately enter an Order of Final Judgment.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 24th day of February 2014.

                                                                               ROBIN S. ROSENBAUM
                                                                               UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of record